IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


SUSAN E. BREED,                          )
                                         )
                    Plaintiff,           )
                                         )
             v.                          )          1:10CV583
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social            )
Security,                                )
                                         )
                                         )
                    Defendant.           )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Susan E. Breed, brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying

her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Title II and Title XVI of the Act.[1]  The Court

has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed applications for a POD, DIB, and SSI benefits on December 30, 2002, alleging a disability onset date of August 1, 2000. (Tr. 5, 58-60.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 43-54.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 55.) At the January 20, 2006 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 596-616.) At the hearing, Plaintiff amended her request to a closed period from August 1, 2000 to November 1, 2004. (*Id.* at. 560, 600; Docket Entry 12 at 1.)[3] The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 558-68.) On November 15, 2007, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ instructing him to further consider the opinion of Dr. Christina Mickiewicz, to reassess Plaintiff's RFC, and to obtain supplemental testimony from a VE regarding Plaintiff's ability to work. (*Id.* at 577-79.) The ALJ held an additional hearing on March 26, 2008. (*Id.* at 617-40.) At that hearing were Plaintiff, her attorney, and a VE. (*Id.*) The ALJ again concluded that Plaintiff was not disabled under the Act. (*Id.* at 16-29.) The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 8-10.)

# II. FACTUAL BACKGROUND

Plaintiff was thirty-eight years old on the alleged disability onset date, had at least a high school education, was able to communicate in English, and her past relevant work was as a psychologist. (*Id.* at 27-28.)

---

[2] Transcript citations refer to the administrative record.
[3] The relevant period before the Court, therefore, is from August 1, 2000 to November 1, 2004.

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed

3

only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[5] To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[6] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v.*

---

[4] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[5] The statutes and regulations applicable to disability determinations for DIB and SSI are generally the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[6] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

*Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both his residual functional capacity[7] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled from the alleged onset date to the date of the decision. (Tr. 29.)

---

[7] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date of August 1, 2000. (*Id.* at 21.) The ALJ next found in step two that Plaintiff had severe impairments: fibromyalgia, post-traumatic stress disorder, attention deficit hyperactivity disorder, irritable bowel syndrome, and depression. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 24) At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (*Id.* at 27.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 26-27.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform medium work as follows. (*Id.* at 26.) Plaintiff could stand and walk six hours in an eight hour workday and sit six hours in an eight hour work day. (*Id.*) She could understand and remember simple instructions, could perform simple, routine and repetitive tasks, interact occasionally with co-workers and supervisors, and less than occasionally with the public and could adapt to routine work changes. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence and found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (*Id.*)

6

## C.  Past Relevant Work

In step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a psychologist.  (*Id.* at 27.)

## D.  Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979).  Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was 38 years old on her alleged disability onset date which is defined as a "younger individual age 18-49," with at least a high school education, and the ability to communicate in English.  (Tr. 28.)  The ALJ noted that transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  (*Id.*)  The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from August 1, 2000, the alleged onset date, through the date of decision.  (*Id.* at 28-29.)

# V. ANALYSIS

Plaintiff raises two arguments. First, she contends that the ALJ erred in failing to give controlling weight to her treating physician. (Docket Entry 12 at 12.) Second, Plaintiff asserts that the ALJ erred in his credibility analysis. (*Id.* at 10.)

## A. The ALJ Properly Applied the Treating Physician Rule.

Plaintiff contends that the ALJ should have given controlling weight to the medical opinions of Dr. Mickiewicz, a treating physician. (*Id.* at 12.) The "treating physician rule,"[8] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[9] But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* §§ 404.1527(d)(2)-(6),

---

[8] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[9] Social Security Ruling 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions.* However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* Social Security Ruling 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." Social Security Ruling 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner.* However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

416.927(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *Id.* §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In December of 2003, Dr. Mickiewicz opined that Plaintiff had marked and extreme limitations in several areas of functioning and that she would consequently be absent from work more than three times per month. (Tr. 446-450.) Nevertheless, the ALJ assigned these conclusions "little weight." (*Id.* at 27.) Specifically, the ALJ stated:

> The undersigned gives little weight to Dr. Mickiewicz's December 2003 opinion as it was not consistent with the treatment records and did not accurately reflect the claimant's functional capacity during the closed period. The claimant reported improvement in her sleep and energy as well as exercise and meditation during her November 5, 2003 visit. On

9

> December 10, 2003, Dr. Mickiewicz noted that the claimant had
> decreased agoraphobia and that she was sleeping better now.
> She told Dr. Mickiewicz that she was being more assertive with
> her roommate (Exhibit 24F/7). Dr. Mickiewicz opined that the
> claimant had [a] GAF [score of] 60 and had gone as high as 70 in
> the previous year, which reflected that she had mild to moderate
> symptoms (Exhibit 24F/20).

(*Id.* at 27.)

The ALJ's assessment of Dr. Mickiewicz's opinion is supported by substantial

evidence. First, Dr. Mickiewicz's December 2003 opinion assigns Plaintiff a Global

Assessment of Functioning ("GAF") score of 60, and notes further that Plaintiff's highest

GAF score the past year was 70.[10] (*Id.* at 446.) Plaintiff essentially concedes that a GAF

score of 60 is inconsistent with findings of marked and extreme limitations. (Docket Entry 12

at 14, "The ALJ is correct; [Plaintiff's] score of 60 cannot possibly square with the severity of

impairment that Dr. Mickiewicz reported. [It] indicates symptoms that are merely

'moderate.'") Plaintiff attempts to reconcile this inconsistency, asserting that Dr. Mickiewicz

had not recently consulted the DSM-IV. (*Id.*) However, Plaintiff's attempt to discredit her

treating psychiatrist is not convincing as it seems unlikely a practicing psychiatrist would be

ignorant in this regard.

Second, Defendant correctly points to (Docket Entry 14 at 7-9) additional substantial

---

[10] The GAF is a scale ranging from zero to one hundred used to rate an individual's psychological, social, and occupational functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32-34 (4th Ed., Text Revision 2000). Scores between 41 and 50 indicate serious symptoms (such as suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* Scores between 51-60 indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Id.* Scores between 61 and 70 indicate mild symptoms or some difficulty in social, occupational, or school functioning. *Id.*

evidence supporting the ALJ's assessment of Plaintiff's mental limitations. For example, Plaintiff reported improved symptoms as a results of a change in medication in April 2002. (Tr. 436.). On June 21, 2002, Plaintiff again reported improvement with her symptoms and stated that she had an appointment with vocational rehabilitation as part of her job search. (*Id.* at 415.) In July 2002, Plaintiff noted improved mood stability and Dr. Paul Kocsis, her treating psychiatrist, reported that Plaintiff was attentive and alert and had adequate cognitive behavior. (*Id.* at 409.) In August 2002, Dr. Kocsis noted improvement in Plaintiff's symptoms and Plaintiff indicated that she was pleased with her present state and had plans for the future. (*Id.* at 391, 212.) In January 2003, Plaintiff reported increased hope for future happiness and decreased feelings of sadness and fear. (*Id.* at 312.) When evaluated further that month, Plaintiff was noted to have made significant but inconsistent improvement. (*Id.* at 307.) In April 2003, Plaintiff reported improvement in her activity level (*id.* at 291) and stated that she was assisting a local business with its marketing tactics in exchange for permission to work at its pottery studio (*id.* at 283). In January 2004, during a meeting with Dr. Mickiewicz, Plaintiff reported that she was sleeping and functioning better, was exercising more and was better able to perform activities of daily living. (*Id.* at 489-90.) Dr. Mickiewicz indicated in March 2004 that Plaintiff was sleeping better and her prognosis was "good." (*Id.* at 487-88.) In April of 2004, Dr. Mickiewicz again recorded that Plaintiff's ability to perform daily activities had improved. (*Id.* at 485-86.) Also, in November 2004, Plaintiff reported that her ADHD, anxiety and PTSD were under good control and doing well. (*Id.* at 537.) Plaintiff also took vacations during the period in question. (*Id.* at 383, 386, 325.)

11

Third, a state agency physician, Dr. G. Gage, evaluated Plaintiff's mental impairments and concluded that Plaintiff could follow two-step instructions, maintain attention and concentration to perform simple, routine, and repetitive tasks for up to two hours at a time, would have difficulty with social interaction, and would have some difficulty adapting to changes in the work setting. (*Id.* at 270.) A second state agency physician, Dr. Marianne Breslin, agreed. (*Id.* at 507.) Consequently, the ALJ limited Plaintiff to the performance of simple, routine, repetitive tasks in an environment with only limited contact with others, and also noted that Plaintiff could only adapt to routine changes in the work setting. (*Id.* at 26.) For all of these reasons, the ALJ did not err in assigning Dr. Mickiewicz's opinion little weight or concluding that Plaintiff was not disabled under the Act.

Plaintiff's arguments to the contrary are not convincing. Plaintiff cites *Sorensen v. Barnhart*, 69 Fed. App'x 864 (9th Cir. 2003) for the proposition that a claimant's symptoms may fluctuate without compelling the conclusion that the record is contradictory as to her ability or that she can consistently function better than the negative reports reflect. (Docket Entry 12 at 13.) Yet, as explained, Plaintiff's mental condition generally improved over time. The facts of this case are simply inapposite from those in *Sorensen*.

Plaintiff points out that in December 2003, Dr. Mickiewicz added a medication because of Plaintiff's reoccurring depression and fatigue and that in the prior month he had increased her Effexor because of recurring panic attacks. (Docket Entry 12 at 13 citing Tr. 492, 495.) Plaintiff further notes that as late as September 2004, she was complaining of worsening headaches that Dr. Christopher Meyer attributed to anxiety and/or depression. (*Id.* citing Tr.

12

542.) While this evidence may support the conclusion that Plaintiff had some limitations arising from her physical and/or mental conditions, it does not demonstrate that the ALJ mishandled Dr. Mickiewicz's opinion, nor is it inconsistent with Plaintiff's RFC, or the ALJ's conclusion that Plaintiff was not disabled under the Act during the period in question.

Plaintiff also argues that the ALJ erred by declining to address the opinion of Ms. Louise Glogau, a licensed psychological associate. (Docket Entry 12 at 15; Tr, 552.) Ms. Glogau indicated Plaintiff had "marked" difficulty in social functioning, "marked" inability to carry out detailed instructions, "marked" loss of ability to perform at a consistent pace without an unreasonable number and length of rest periods, and "marked" loss of ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 552-57.) However, Ms. Glogau's opinion notes that Plaintiff's limitations had existed since February 2004, when she began treating Plaintiff. (*Id.* at 552.) A claimant must demonstrate that her disability causes limitations that remained (or were likely to remain) disabling for at least twelve continuous months. *See* 20 C.F.R. §§ 404.1509, 404.1522(b), 416.909, 416.922(b). By itself, Ms. Glogau's opinion, rendered less than twelve months before the end of Plaintiff's alleged POD on November 1, 2004 (Docket Entry 12 at 1), is not a basis for a disability finding. And, in any event, Ms. Glogau's conclusions are largely inconsistent with the remainder of the record as detailed in this recommendation. Simply put, the overall record simply does not support a finding that Plaintiff was disabled under the Act.

Plaintiff notes too that Dr. Mickiewicz's opinion was also supported by Dr. Alexander Julian, a psychologist who in July 2002 described Plaintiff as being impulsive and emotionally

13

volatile, as needing intensive outpatient therapy, as possibly having difficulties adapting to close supervision, and as having "covert authority conflicts." (Tr. 198-99.) In considering Dr. Julian's opinion, the ALJ noted:

> [Dr. Julian] evaluated the claimant for Vocational Rehabilitation services on July 5, 2002. The claimant reported that she received out-patient counseling for most of her adult life. She described her current mood as being anxious, panicky and severely depressed. She was tearful at times over the recent death of a pet. She was extremely talkative and cheerful. She displayed a very labile affect. Dr. Julian opined that the claimant would be better in jobs that did not involve intense interpersonal relationships. Dr. Julian encouraged her to get involved with AA in light of her history of binge drinking. It is noteworthy that someone, apparently the claimant, changed statements and added her own comments to this evaluation.

(*Id.* at 24.) Dr. Julian's opinion does not suggest that Plaintiff is unable to work, nor is it inconsistent with her RFC. Nothing about Dr. Julian's medical opinion suggests that the ALJ erred in giving Dr. Mickiewicz's opinion little weight or that the ALJ erred in concluding Plaintiff was not disabled under the Act. There is no error here.

Finally, Plaintiff asserts that Dr. Mickiewicz's opinions were supported by statements from therapist Vivian Roberti. (Docket Entry 12 at 14.) Specifically, Plaintiff contends that in November 2002, Ms. Roberti noted that Plaintiff "would burst into tears and become agitated during discussions about her recent past," that "[s]he presented with pressured speech and impaired judgment," and that "[h]er insight was impaired and she appeared to not be able to handle stress." (*Id.* at 14-15.) Plaintiff contends Ms. Roberti concluded "It is my opinion that [Plaintiff] could not have worked and that she was disabled by her emotional problems

prior to and during the time I saw her for treatment." (*Id.*) Plaintiff argues the ALJ erred in not referencing this evidence in his decision and that its omission warrants remand. (*Id.*)

Plaintiff did not submit Ms. Roberti's November 2002 note to the ALJ and concedes that it is not in the record, though her statements are mentioned in a letter from Plaintiff to the Appeals Council. (Tr. 574, 593-94; Docket Entry 12 at 15.) A court may remand a case to the Commissioner on the basis of new evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court. *Miller v. Barnhart*, 64 Fed. App'x 858, 859-60 (4th Cir. 2003); 42 U.S.C. 405(g). The Fourth Circuit has elsewhere concluded that the additional evidence must relate to the period on or before the date of the ALJ's decision. *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Here, Plaintiff has failed to show that this material is new (it was created several years prior to the ALJ's decision in 2008) or material (it addressed a matter reserved for the Commissioner and does not undermine the ALJ's overall assessment of the record). Nor has Plaintiff shown good cause for her failure to submit this evidence earlier. Remand or reversal is not warranted.[11]

---

[11] The ALJ had the opportunity to examine some of Ms. Roberti's treatment notes which are in the record. (*See, e.g.,* Tr. 202-03.) These notes do not demonstrate that the ALJ erred in concluding Plaintiff was not disabled under the Act.

15

## B. The ALJ Properly Assessed Plaintiff's Credibility.

Plaintiff next contends that the ALJ erred in his credibility analysis (Docket Entry 12 at 10-12) and faults the ALJ for failing to mention Plaintiff's fibromyalgia (*id.* at 10-11) in that analysis. Plaintiff also contends that the ALJ erred further as to her mental impairments when assessing her credibility.[12]  (*Id.* at 11-12.)

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence

---

[12] Plaintiff asserts that she was "a total wreck" and it was "almost inconceivable that she could hold a job." (Docket Entry 12 at 11-12.) Plaintiff notes too that Dr. Kocsis "provisionally diagnos[ed] her as having borderline personality disorder," based in part on Plaintiff's self-reporting. (Tr. 433.) Plaintiff notes that on April 18, 2002, Dr. Kocisis described Plaintiff's affect as "all over the map, from happy smiling laughter to loud sobbing crying with angry clenched fists and moving her body about." (*Id.* at 433.) She "needed to be redirected or directed in this examination frequently." (*Id.*) Plaintiff sat "excessively close to the interviewer immediately on the interview." (*Id.* at 431.) Plaintiff "displayed substantial affective instability . . . such as when finding out that our Pharmacy did not carry Ritalin or Wellbutrin SR, she broke down into intensely loud crying spells." (*Id.*) It took Plaintiff quite a while to calm down. (*Id.*) Plaintiff also points to the handwritten notes she wrote on Dr. Julian's evaluation that Plaintiff's "covert authority conflicts" were in fact "overt rebellion." (*Id.* at 198.) Plaintiff notes too Dr. Meyer's treatment notes reference a statement by Plaintiff that she was not sure if her back pain was "all . . . in her head or not." (*Id.* at 541.)

16

relevant to the severity of the impairment." *Grubby*, No. 1:09cv364, 2010 WL 5553677, at *3

(W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)).

"Other evidence" refers to factors such as claimant's daily activities, duration and frequency of

pain, treatment other than medication received for relief of symptoms, and any other measures

used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and
> mental limitations or restrictions and make every reasonable
> effort to ensure that the file contains sufficient evidence to assess
> RFC. Careful consideration must be given to any available
> information about symptoms because subjective descriptions
> may indicate more severe limitations or restrictions than can be
> shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims.* Similarly, in determining the

credibility of a claimant, SSR 96-7p, *Assessing the Credibility of an Individual's Statements*, instructs

the ALJ to "consider the entire case record" and requires a credibility determination to

"contain specific reasons for the finding on credibility, supported by the evidence in the case

record[.]" SSR 96-7p. An ALJ's credibility determination receives "substantial deference."

*Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

Here, the ALJ performed both steps of the analysis. First, the ALJ completed step

one, concluding that the "claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms." (Tr. 26.) Next, the ALJ completed step two of the

analysis, concluding Plaintiff's statements regarding "intensity, persistence, and limiting effects

of [her] symptoms [were] not credible to the extent they are inconsistent with" her RFC. (*Id.*)

The ALJ continued his analysis concluding:

17

The records from the Durham Center dated August 4, 2003 revealed that she had no primary physician listed with the Medicaid program. On September 10, 2003, the claimant telephoned the Durham Center and said she was interested in returning to complete her DWI classes and possibly attend some groups, but did not want to see Dr. Kocsis again. On September 24, 2003, Dr. Kocsis wrote a treatment indicat[ing] that the claimant was receiving treatment elsewhere (Exhibit 18F/2). The objective evidence does not fully support her testimony as Dr. Kocsis questioned whether the claimant had refrained from alcohol after her motor vehicle accident in April 2002. The claimant did some "doctor shopping" during which she received Ritalin without informing her physician. She decided to change psychiatrists after she was "called" on this behavior by Dr. Kocsis. The claimant was able to perform work activities during this period as she worked at a pottery studio, in exchange for assisting the business in their marketing tactics. There were several references to her looking for work and it appeared she was able to perform a job with simple, routine and repetitive tasks without a lot of public contact.

(*Id.* at 27.) This assessment is supported by substantial evidence. (*Id.* at 283 148, 161, 273, 275, 283, 360, 390-92, 399-400, 415, 430, 436, 628-29.)

Next, the ALJ next gave:

> [c]onsiderable weight to the State Agency medical consultants' opinions that the claimant was able to perform medium work, which was simple, routine and repetitive with occasional interaction with co-workers and supervisors. The consultants reviewed the medical records and determined that the claimant was alert and oriented during her April 2004 examination. Her affect was euthymic and she had no psychotic symptoms and demonstrated good insight and judgment.

(*Id.* at 27.) These conclusions are also supported by substantial evidence.[13] (*Id.* at 246-71, 507.)

---

[13] The ALJ also addressed and partially discounted the medical opinion of Dr. Mickiewicz. (Tr. 27.) The undersigned has addressed that opinion above and will not do so again here.

18

Although the ALJ did not mention fibromyalgia in his credibility analysis, he did assert that he considered all the evidence. (*Id.* at 26.) And elsewhere in his decision, the ALJ also expressly evaluated Plaintiff's fibromyalgia. (*Id.* at 24.) For example, the ALJ noted:

> Rashid A. Sheikh, M.D., examined the claimant on August 23, 2003. The claimant told Dr. Sheikh that she lost her job due to ongoing fibromyalgia. She reported symptoms of frequent crying spells, feeling of helplessness and social isolation. She complained of intermittent fibromyalgia, which was being treated at Lincoln Community Health. She alleged that she was unable to clean, wash dishes or cook secondary to fibromyalgia. Dr. Sheikh noted that she had multiple trigger points over the trochanteric area, hip, shoulders and knees. She was able to perform heel and toe walking as well as squat and rise without difficulties. She was diagnosed with depression, fibromyalgia syndrome and history of hypertension. Dr. Sheikh reported that her fibromyalgia was under good control without much tenderness or trigger points on examination. Dr. Sheikh opined that her prognosis was fair (Exhibit 14F).
>
> The claimant has done relatively well when she takes her medication as prescribed and refrains from using alcohol and cannabis. She completed a Masters and Doctorate of Education degree in psychology, despite suffering from ADHD and with appropriate medication, this condition was not disabling. The claimant did not suffer any significant physical limitation from her diagnosis of "fibromyalgia."

(*Id.*) This assessment too is supported by substantial evidence. (*Id.* at 240-44.)

To sum, the ALJ considered all the medical evidence of record, including the opinions of state agency medical reviewers who supported his findings. (*Id.* at 21-24, 26-27.) *See Stanley v. Barnhart*, 116 Fed. App'x 427, 429 (4th Cir. 2004) (disagreeing with argument that ALJ improperly gave more weight to residual functional capacity assessments of non-examining

state agency physicians over those of examining physicians). The ALJ further considered Plaintiff's ability to work at a local business in exchange for permission to use the business's pottery studio. (*Id.* at 27, 283.) *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.") And the ALJ considered further that Plaintiff conducted a job search during her period of disability. (Tr. 27, 148, 161, 390-92, 399-400, 415, 436). *See Bray v. Commissioner*, 554 F.3d 1219, 1227 (9th Cir. 2009) (among the specific findings supporting the ALJ's adverse credibility determination was the fact that the claimant had sought employment); *Laderson v. Astrue*, No. 10 Civ. 7797(RPP), 2011 WL 6083189, at *8 (S.D.N.Y. Dec. 6, 2011) (concluding that "the ALJ properly considered . . . that [claimant] was seeking work"). Last, as explained, the ALJ pointed to conduct that casts a degree of doubt on Plaintiff's credibility, such as doctor shopping for Ritalin. (Tr. 360, 434.) *See Hart v. Astrue*, 349 Fed. App'x 175, 177 (9th Cir. 2009) ("The record is replete with instances of Hart making misrepresentations, doctor-shopping and drug seeking. The ALJ thus provided clear and convincing reasons for rejecting Hart's testimony.") In short, despite Plaintiff's arguments to the contrary, the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

## VI. CONCLUSION[14]

After a careful consideration of the evidence of record, the Court finds that the

---

[14] Plaintiff requests oral argument (Docket Entry 12 at 16), however oral argument is not necessary to the understanding and disposition of the issues before the Court.

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED** and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 12, 2013

21